Andrew S. Friedman (005425)
afriedman@bffb.com
Kimberly C. Page (022631)
kpage@bffb.com
**BONNETT FAIRBOURN FRIEDMAN**
  **& BALINT, PC**
2325 East Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100

Hannah Ross (to be admitted *Pro Hac Vice*)
hannah@blbglaw.com
Avi Josefson (to be admitted *Pro Hac Vice*)
avi@blbglaw.com
Scott R. Foglietta (to be admitted *Pro Hac Vice*)
scott.foglietta@blbglaw.com
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

*Attorneys for Plaintiff*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| City of Pontiac General Employees' Retirement System, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>First Solar, Inc.; Mark Widmar; Alexander R. Bradley; and Georges Antoun,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>DEMAND FOR JURY TRIAL |

Plaintiff the City of Pontiac General Employees' Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included review and analysis of: (i) regulatory filings made by First Solar, Inc. ("First Solar" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (ii) press releases, presentations, and media reports issued by and disseminated by the Company; (iii) analyst and media reports concerning First Solar; and (iv) other public information regarding the Company.

## I. **INTRODUCTION**

1. This securities class action is brought on behalf of all persons or entities that purchased or otherwise acquired shares of First Solar common stock between February 22, 2019, and February 20, 2020, inclusive (the "Class Period"). The claims asserted herein are alleged against First Solar and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2. Headquartered in Tempe, Arizona, First Solar is a manufacturer of solar energy panels and powerplants. This matter arises from Defendants' repeated misrepresentations to investors regarding the development of its newest "Series 6" solar module, the cost per unit it could achieve with that module, and the impact the changeover to this new product would have on the viability of its other business segments.

3. First Solar's business is comprised of multiple segments. The modules segment ("Modules") manufactures photovoltaic ("PV") solar panel units, which are then installed at project development sites or sold to third parties. The Company's project development segment ("Project Development") buys land, develops sites, installs solar panel units, and then sells the entire site to a buyer, typically a utility provider or large tech company. During construction and after a site has been sold, the Company's engineering,

procurement, and construction ("EPC") segment provides engineering design and related services, such as construction contracting, while the Company's operating and maintenance ("O&M") segment provides support to solar panel sites, including activities associated with operating and maintaining a solar power system.

4. Through these interrelated business segments, First Solar stood to generate income not only through the manufacturing of solar panels and the creation of Project Development sites, but also through the EPC and O&M segments that continued to generate income for First Solar after a project was developed and sold. According to industry analysts, First Solar's value proposition was premised on such "through-cycle support from project development," which is where "most of the multi-year gross profit emanates, irrespective of manufacturing[] . . . ." In contrast, many competitors engage in either the project development segment or offer EPC and O&M support, but few offer both.

5. While First Solar's business segments operated separately, there was significant overlap within the Company. Oftentimes, First Solar would refer to the Project Development, EPC, and O&M businesses collectively as its "Systems" segment. The Company used this breakdown when it reported financial results in its SEC filings. Specifically, First Solar's SEC filings during the Class Period included net sales and cost of sales figures broken out between the Modules segment and the "Systems" segment.

6. Prior to the Class Period, in 2017, First Solar launched a new PV solar panel module, the Series 6. At the beginning of the Class Period, First Solar laid out an "aggressive" Series 6 cost per watt reduction target. Throughout the Class Period, First Solar led investors to believe that the Company was meeting those cost per watt reduction targets and touted the success of the Series 6 program and the consistent improvement of the cost per watt of the Series 6. For example, in August 2019 First Solar executives confirmed that the Company had achieved the Series 6 cost per watt objective it had set for the first half of 2019. Finally, in October 2019 First Solar claimed that it was "slightly ahead of the roadmap." These and similar statements made throughout the Class Period

were false. In reality, the Defendants knew or recklessly disregarded that the Series 6 solar module was not commercially ready at the time of its release, had a component that was failing in the field and causing fires, was not able to hit its projected and touted wattage targets, and had an inconsistent output—all of which put First Solar at a competitive disadvantage.

7. The truth began to emerge on January 15, 2020, when Barclays reported that, among other things, "First Solar ha[d] seemingly been, in large part, priced-out of the U.S. downstream solar market," and that the Company had concealed its rapidly declining market share through misleading financial reporting. According to analysts at Barclays, First Solar was obfuscating this fact by improperly reporting its Project Development pipeline to make it seem like the Company maintained a stronger market share, despite the fact that some projects on the pipeline had been completed in prior years. On this news, the price of First Solar stock fell $4.03 per share, or nearly 7%, from a close of $58.78 on January 14, 2020, to close at $54.75 per share on January 15, 2020.

8. On February 6, 2020, Barclays issued another report and suggested that, in an attempt to gain back its market share, First Solar was "bidding more aggressively, leading to lower [Project Development contract] prices, and finally cutting into margins." On this news, the price of First Solar stock fell $0.45 per share, from a close of $53.10 on February 5, 2020, to close at $52.65 per share on February 6, 2020.

9. Finally, on February 20, 2020, First Solar announced that it was exploring a sale of its Project Development business. On the same day, First Solar acknowledged it was experiencing "challenges with regard to certain aspects of the overall cost per watt" and that the Company would not be realizing its cost per watt goals, despite having previously represented that it had been "slightly ahead of" its goals as recently as the previous quarter. Following this, the Company stated that it would no longer be disclosing a discrete cost per watt for its Series 6 units. When asked by an industry analyst to further explain the decision to no longer provide discrete cost per watt data, First Solar executives

claimed that customers had "start[ed] to hold [the Company] accountable to a cost-plus model . . . [a]nd so we have purposely moved away from giving a discrete cost per watt." These disclosures caused First Solar stock to decline by $8.73 per share, or nearly 15%, from a close of $59.32 per share on February 20, 2020, to close at $50.59 per share on February 21, 2020.

## II. JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa), and 28 U.S.C. § 1391(b). First Solar maintains its headquarters in Tempe, Arizona, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including dissemination to the public of materially false and misleading information, occurred in and/or were issued from this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III. PARTIES

12. Plaintiff is a pension plan providing benefits to eligible general employees of the City of Pontiac, Michigan. As indicated in the certification submitted herewith, Plaintiff purchased shares of First Solar common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

13. Defendant First Solar is a manufacturer of solar energy panels and

powerplants. Incorporated in Delaware, First Solar maintains its corporate headquarters in Tempe, Arizona. First Solar common stock trades on NASDAQ, under the ticker symbol "FSLR." As of October 29, 2021, First Solar had over 106 million shares of common stock outstanding, owned by hundreds or thousands of investors.

14. Defendant Mark Widmar ("Widmar") has served as Chief Executive Officer of First Solar since July 2016.

15. Defendant Alexander R. Bradley ("Bradley") has served as Chief Financial Officer of First Solar since October 2016.

16. Defendant Georges Antoun ("Antoun") has served as Chief Commercial Officer of First Solar since July 2016.

17. Defendants Widmar, Bradley, and Antoun are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with First Solar, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports, presentations, and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

**IV. BACKGROUND**

18. Headquartered in Tempe, Arizona, First Solar is a manufacturer of solar panels and powerplants, which it installs at project development sites or sells to third parties.

19. On December 5, 2017, prior to the start of the Class Period, First Solar

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
5

announced the commercial launch of its Series 6 module—which, according to the Company, was "expected to enter the commercial market with a power rating of 420-445 watts and conversion efficiency of over 17 percent." The Series 6 module was designed to replace the Company's Series 4 module, which had a peak power rating of only 122 watts.

V. **DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS CAUSE SUBSTANTIAL LOSSES TO INVESTORS**

20. The Class Period begins on February 22, 2019, the first trading day after First Solar held its 2018 fourth quarter and year-end earnings conference call, which took place after the market closed on February 21, 2019. On that call, Defendant Widmar touted the strength of the Series 6 module and downplayed concerns about the unit. Defendant Widmar stated that First Solar had "seen steady improvement in our Series 6 throughput in wattage across our entire fleet." When an industry analyst asked if the Company was falling short of its contractual requirements when it came to wattage output, Defendant Widmar blamed an issue with anti-reflective coating on some of the Series 6 units, and stated that as "we go forward . . . some of the early launch issues that we had will be subsided."

21. On May 2, 2019, First Solar held its first quarter 2019 earnings call. During the call, Defendant Bradley stated that the Company had "the highest Series 6 cost per watt relative to the full year average" for the first quarter.

22. On August 1, 2019, First Solar held its second quarter 2019 earnings call. During the call, Defendant Widmar stated, "[t]he progress we have made ramping our factories has been a key contributor, enabling the achievement of our Series 6 cost per watt objectives for the first half of 2019."

23. On October 24, 2019, First Solar held its third quarter 2019 earnings calls. During the call, Defendant Widmar stated, "[a]t the beginning of the year, we laid out an aggressive Series 6 cost per watt reduction target for 2019 . . . we are pleased with the progress made and are slightly ahead of the roadmap."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS
6

24.   The statements set forth above in ¶¶20-23 were materially false and misleading.  Specifically, Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose that: (i) the Series 6 module was grossly underperforming and was unable to hit its wattage targets; (ii) when the units installed at the Project Development sites were unable to produce the contractually mandated wattage target, additional units needed to be installed – an additional cost borne by First Solar; (iii) when additional Series 6 units had to be installed at Project Development sites to compensate for the insufficient and inconsistent wattage, rather than properly charging the costs of the additional Series 6 units to the Modules segment, the Company instead improperly booked the cost of the additional units to the Systems segment; and (iv) as a result of the foregoing, Defendants' positive statements about First Solar's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis.

**VI.   THE TRUTH EMERGES**

25.   On January 15, 2020, Barclays downgraded the Company and reported that "First Solar ha[d] seemingly been, in large part, priced-out of the U.S. downstream solar market," and that the Company had concealed its rapidly declining market share through misleading financial reporting.  Specifically, analysts at Barclays reported that First Solar was obfuscating this fact by improperly reporting its Project Development pipeline to make it seem like the Company maintained a stronger market share, despite the fact that some projects on the pipeline had been completed in prior years.

26.   Barclays uncovered the truth about the diminishing market share commanded by First Solar's Project Development segment only through an in-depth review of a Bloomberg database and corroborating data points from First Solar's own SEC filings.  Specifically, Barclays' analysts "combed through and corrected the [Bloomberg New Energy Finance] database to account for company acquisitions, multiple company names" and corroborated First Solar's data points.  They then isolated non-operational projects to

represent the current development pipeline and discovered that "First Solar's market share decline in its pipeline . . . only became starkly evident over the last year or so." Through this detailed analysis, Barclays' analysts were able to determine that "First Solar has simply been unable to compete on cost." This news caused the Company's stock to decline $4.03 per share, or nearly 7%, from a close of $58.78 on January 14, 2020, to close at $54.75 per share on January 15, 2020.

27. Another Barclays report, from February 6, 2020, also suggested that, in an attempt to gain back its market share, First Solar was "bidding more aggressively, leading to lower [Project Development contract] prices, and finally cutting into margins." This news caused the Company's stock to decline $0.45 per share, from a close of $53.10 on February 5, 2020, to close at $52.65 per share on February 6, 2020.

28. Then, on February 20, 2020, First Solar held its fourth quarter 2019 earnings conference call. On that call, Defendant Widmar announced that the Company was exploring a sale of its Project Development business. That same day, First Solar also acknowledged it was experiencing "challenges with regard to certain aspects of the overall cost per watt." In addition, Defendant Widmar stated that the Company would no longer be disclosing a discrete cost per watt for its Series 6 units. When asked by an industry analyst to further explain the decision to no longer provide discrete cost per watt data, Defendant Widmar claimed that customers had "start[ed] to hold [the Company] accountable to a cost-plus model . . . and so we have purposely moved away from giving a discrete cost per watt." These disclosures caused First Solar stock to decline $8.73 per share, or nearly 15%, from a close of $59.32 per share on February 20, 2020, to close at $50.59 per share on February 21, 2020.

29. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## VII. LOSS CAUSATION

30. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market. This artificially inflated the price of First Solar common stock and operated as a fraud or deceit on the Class (as defined below). Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of First Solar stock fell precipitously as the prior artificial inflation came out of the price over time. As a result of their purchases of First Solar common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VIII. CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities that purchased or otherwise acquired the publicly traded common stock of First Solar during the Class Period (the "Class"). Excluded from the Class are Defendants, their agents, directors and officers of First Solar, and their families and affiliates.

32. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. As of October 29, 2021, there were over 106 million shares of First Solar common stock outstanding, owned by hundreds or thousands of investors.

33. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a) Whether Defendants violated the Exchange Act;

    (b) Whether Defendants omitted and/or misrepresented material facts;

    (c) Whether Defendants' statements omitted material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether the Individual Defendants are personally liable for the alleged misrepresentations and omissions described herein;

(e) Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(f) Whether Defendants' conduct impacted the price of First Solar common stock;

(g) Whether Defendants' conduct caused the members of the Class to sustain damages; and

(h) The extent of damage sustained by Class members and the appropriate measure of damages.

34. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

35. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Joinder of all Class members is impracticable.

## IX. INAPPLICABILITY OF STATUTORY SAFE HARBOR

37. First Solar's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

38. Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of First Solar who knew that the statement was false.

None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## X. PRESUMPTION OF RELIANCE

39. At all relevant times, the market for First Solar common stock was an efficient market for the following reasons, among others:

    (a) First Solar common stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

    (b) As a regulated issuer, First Solar filed periodic public reports with the SEC and NASDAQ;

    (c) First Solar regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    (d) First Solar was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s). Each of these reports was publicly available and entered the public marketplace.

40. As a result of the foregoing, the market for First Solar common stock promptly digested current information regarding First Solar from all publicly available sources and reflected such information in the price of First Solar common stock. Under these circumstances, all purchasers of First Solar common stock during the Class Period suffered similar injury through their purchase of First Solar common stock at artificially

inflated prices and the presumption of reliance applies.

41. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions. Because this action involves Defendants' failure to disclose material adverse information regarding First Solar's business operations—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of adequate safeguards to protect users from harm caused by First Solar's products, that requirement is satisfied here.

## COUNT I
### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

42. Plaintiff repeats, incorporates, and realleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase First Solar common stock at artificially inflated prices.

44. Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for First Solar common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

46. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

47. Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal First Solar's true condition from the investing public and to support the artificially inflated prices of the Company's common stock.

48. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for First Solar common stock. Plaintiff and the Class would not have purchased First Solar common stock at the prices they paid, or at all, had they been aware that the market prices for First Solar common stock had been artificially inflated by Defendants' fraudulent course of conduct.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's common stock during the Class Period.

50. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5, promulgated thereunder.

**COUNT II**
**For Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

51. Plaintiff repeats, incorporates, and realleges each and every allegation

|   | |
|---|---|
| 1 | contained above as if fully set forth herein. |
| 2 | 52.     The Individual Defendants acted as controlling persons of First Solar within |
| 3 | the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, |
| 4 | participation in and/or awareness of the Company's operations, direct involvement in the |
| 5 | day-to-day operations of the Company, and/or intimate knowledge of the Company's |
| 6 | actual performance, and their power to control public statements about First Solar, the |
| 7 | Individual Defendants had the power and ability to control the actions of First Solar and its |
| 8 | employees.  By reason of such conduct, the Individual Defendants are liable pursuant to |
| 9 | Section 20(a) of the Exchange Act. |

## XI. PRAYER FOR RELIEF

53.     WHEREFORE, Plaintiff prays for judgment as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d)     Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XII. JURY DEMAND

54.     Plaintiff demands a trial by jury.

DATED: January 7, 2022              Respectfully submitted,

**BONNETT FAIRBOURN FRIEDMAN & BALINT, PC**

By:/s/ *Andrew S. Friedman*
Andrew S. Friedman
afriedman@bffb.com
Kimberly C. Page
kpage@bffb.com

| | |
|---|---|
| 1 | 2325 East Camelback Road, Suite 300 |
| | Phoenix, AZ 85016 |
| 2 | Telephone: (602) 274-1100 |
| 3 | *Liaison Counsel for Plaintiff City of Pontiac* |
| | *General Employees' Retirement System* |
| 4 | |
| | -and- |
| 5 | |
| | **BERNSTEIN LITOWITZ BERGER** |
| 6 | **& GROSSMANN LLP** |
| | Hannah Ross (to be admitted *Pro Hac Vice*) |
| 7 | hannah@blbglaw.com |
| | Avi Josefson (to be admitted *Pro Hac Vice*) |
| 8 | avi@blbglaw.com |
| | Scott R. Foglietta (to be admitted *Pro Hac Vice*) |
| 9 | scott.foglietta@blbglaw.com |
| | 1251 Avenue of the Americas |
| 10 | New York, NY 10020 |
| | Telephone: (212) 554-1400 |
| 11 | |
| | *Counsel for Plaintiff City of Pontiac General* |
| 12 | *Employees' Retirement System* |
| 13 | |
| | **KESSLER TOPAZ MELTZER** |
| 14 | **& CHECK, LLP** |
| | Naumon Amjed (to be admitted *Pro Hac Vice*) |
| 15 | namjed@ktmc.com |
| | Darren J. Check (to be admitted *Pro Hac Vice*) |
| 16 | dcheck@ktmc.com |
| | Ryan T. Degnan (to be admitted *Pro Hac Vice*) |
| 17 | rdegnan@ktmc.com |
| | 280 King of Prussia Road |
| 18 | Radnor, PA 19087 |
| | Telephone: (610) 667-7706 |
| 19 | |
| | *Additional Counsel for Plaintiff City of Pontiac* |
| 20 | *General Employees' Retirement System* |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |