**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Palm Harbor Special Fire Control & Rescue District Firefighters Pension Plan, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>First Solar Incorporated, et al.,<br><br>Defendants. | No. CV-22-00036-PHX-MTL<br><br>**ORDER** |

The Court is asked to rule on Defendants First Solar, Inc. ("First Solar"), Mark Widmar, Alexander R. Bradley, and Georges Antoun's ("Individual Defendants" and together with First Solar, "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 38). On January 10, 2023, the Court dismissed Lead Plaintiffs Palm Harbor Special Fire Control & Rescue District Firefighters' Pension Plan and Greater Pennsylvania Carpenters' Pension Fund's (collectively, "Plaintiffs") Amended Complaint but granted leave to amend. (Doc. 33.) Plaintiffs oppose dismissal, arguing that their Second Amended Complaint ("SAC") cures the deficiencies previously identified by the Court. (Doc. 40.) For the following reasons, the Court grants Defendants' Motion and dismisses Plaintiffs' SAC.[1]

---

[1] The parties have submitted legal memoranda, and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

## I. BACKGROUND[2]

As the Court recited the factual background underlying this dispute in its previous Order, it will only briefly reiterate it here. (*See* Doc. 33 at 1–3.) Plaintiffs bring this putative class action for violations of the federal securities laws on behalf of themselves and a putative class of all persons and entities who purchased or otherwise acquired First Solar's common stock between February 22, 2019 and February 20, 2020. (Doc. 34 at 5.) First Solar is a publicly traded Delaware corporation headquartered in Tempe, Arizona that manufactures and sells solar module and photovoltaic ("PV") solar power systems for commercial and residential applications. (*Id.* ¶¶ 11, 45.) Plaintiffs' fraud allegations concern two of First Solar's business segments: (1) the PV solar power Modules Segment (the "Modules Segment") and (2) the project development business within the PV solar power Systems Segment (the "Systems Segment"). (*Id.* ¶¶ 12, 26.) Plaintiffs allege that Defendants made misrepresentations and omissions relating to First Solar's Modules Segment and Systems Segment in violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5, promulgated thereunder. (*Id.* ¶¶ 26, 39.)

In its previous Order, the Court granted Defendants' motion to dismiss because Plaintiffs' Amended Complaint failed to meet the Private Securities Litigation Reform Act's ("PSLRA") "exacting standards and requirements for pleading loss causation and scienter." (Doc. 33 at 19.) In accordance with the Ninth Circuit's standard for granting leave to amend, and Plaintiffs' request, the Court gave Plaintiffs leave to file a SAC. (*Id.*) Defendants now move to dismiss the SAC with prejudice under Federal Rule of Civil Procedure 12(b)(6) for failing to comply with the pleading standards of Rule 9(b) and the PSLRA, 15 U.S.C. § 78u *et seq*. (Doc. 38 at 2.)

---

[2] This background section is based on the well-pleaded factual allegations in the SAC, which are taken as true solely for the purposes of ruling on the instant motion, and on documents the SAC incorporates by reference or that are otherwise subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* At the pleading stage, a court's duty is to accept all well-pleaded complaint allegations as true. *Id.* Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "[D]ismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011).

Securities fraud suits, such as this one, face heightened pleading standards. "At the pleading stage, a complaint stating claims under Section 10(b) and Rule 10b-5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

> Because allegations of fraud inescapably carry a degree of moral turpitude, Rule 9(b) imparts a heightened note of seriousness, requiring a greater degree of pre-discovery investigation by the plaintiff, followed by the plaintiff's required particular allegations, thereby protecting a defendant's reputation from frivolous and unfounded allegations and permitting a particularized basis for a defendant to respond to the particularized allegations.

*Irving Firemen's Relief & Ret. Fund v. Uber Technologies, Inc.*, 998 F.3d 397, 404 (9th Cir. 2021) (citation omitted). Similarly, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). In so doing, the PSLRA "prevents a

plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).[3]

## III.  DISCUSSION

Defendants maintain that the SAC merely "recycle[s] [Plaintiffs'] two disjointed theories of fraud" and move to dismiss it for failing to plead any corrective disclosure establishing loss causation, failing to plead facts that support a strong inference of scienter, and failing to allege any actionable misstatements or omissions. (Doc. 38 at 2–3.) As explored below, the SAC comes short of curing its previously identified deficiencies with its scienter and loss causation allegations.

### A.  Section 10(b) Claim

To state a claim under Section 10(b) of the Securities Exchange Act of 1934, a plaintiff must sufficiently allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) in connection with the purchase or sale of a security; (4) reliance on the misrepresentation or omission; (5) economic loss; and (6) loss causation." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 786 (9th Cir. 2020). Each of these elements must be independently satisfied to survive a motion to dismiss. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) (reasoning that failure to adequately plead any of these elements constitutes "an independent basis" on which to affirm dismissal of a securities fraud complaint).

#### 1.  Scienter

Securities fraud lawsuits require a showing of scienter, i.e., an intent to defraud. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976) (explaining that scienter refers to the mental state embracing an intent to deceive, manipulate, or defraud). "Mere negligence—even head-scratching mistakes—does not amount to fraud." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1103 (9th Cir. 2021). Federal Rule of Civil

---

[3] All emphasis is in original unless otherwise noted.

Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." In enacting the PSLRA, Congress extended Rule 9(b)'s particularity requirements to allegations of scienter. Accordingly, to adequately plead scienter, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A complaint supporting a strong inference of scienter must allege that a defendant made false or misleading statements with an "intent to deceive, manipulate, or defraud," or with deliberate recklessness. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017). And "[d]eliberate recklessness is not *mere* recklessness." *Prodanova*, 993 F.3d at 1106 (internal marks and citation omitted). Rather, it is "an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.*

These standards "present no small hurdle for the securities fraud plaintiff." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (citation omitted); *see also Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) ("The PSLRA's strong inference requirement has teeth. It is an exacting pleading obligation.") (cleaned up). The Court must "engage in a comparative evaluation [and] . . . consider, not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

The Ninth Circuit directs courts to conduct a two-part inquiry to determine whether scienter has been adequately pled. First, courts are to "determine whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter . . . ." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (citations omitted). Second, "if no individual allegation is sufficient," courts are directed

to "conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of [scienter]." *Id.* (citations omitted).

Plaintiffs maintain that the SAC alleges a strong inference of scienter through three different theories. First, Plaintiffs argue that Defendants' knowledge of and access to information contradicting their statements establishes scienter. (Doc. 40 at 15.) Next, Plaintiffs claim that the core operations doctrine leads to a strong inference of scienter. (*Id.* at 16.) Finally, Plaintiffs contend that Defendants' alleged misstatements also support an inference of scienter. (*Id.* at 17.) For the following reasons, the Court finds that the SAC fails to adequately allege any of these theories.

### a. Access to Information

Plaintiffs generally allege that Defendants knew of problems with the Series 6 modules because they discussed issues at First Solar's town hall meetings, reviewed and approved documents discussing the problems, and at least knew about the decisions to withhold shipments because of issues with the modules. (*Id.* at 15–16.) But the SAC fails to identify what specific information was learned, when it was learned, how it was learned, and by who. Indeed, in this respect, the SAC only references Widmar by name, and offers no particularized scienter allegations as to Bradley or Antoun. *See Or. Pub. Emps. Ret. Fund.*, 774 F.3d at 607 (requiring that securities fraud plaintiffs allege scienter "with respect to each of the individual defendants") (citation omitted). And the SAC's new scienter allegations as to Widmar rely on the vague and conclusory assertion from a former employee ("FE") that "Widmar knew about the issues with the Series 6 modules." (Doc. 34 ¶¶ 122, 256.) This conclusory allegation does not clarify which issues Widmar was familiar with or when he allegedly learned of them.

The SAC's town hall meeting allegations are similarly unavailing. As in Plaintiffs' Amended Complaint, these town hall allegations merely state that some of the Individual Defendants attended meetings at unspecified dates, that some issues with the Series 6 module were discussed, and that some of the Individual Defendants often spoke at these

meetings. (*Id.* ¶¶ 124, 125.) Plaintiffs point to FE 1's recollection that, "toward the end of [FE 1's] tenure in 2021[,] . . . Widmar and other senior executives" admitted at some unspecified quarterly meetings that First Solar "had not yet reached the 'baseline output' of 440 watts for the Series 6 panels." (*Id.* ¶ 126.) Beyond the lack of clarity surrounding when these meetings took place, Widmar publicly stated on an October 24, 2019 earnings call that the "top production bin" for the Series 6 was "435 watts." (Doc. 39-1 at 11.) In the face of this earlier statement relating to the Series 6's top production output, it is difficult to see how the later alleged admission essentially confirming as much provides a strong inference of scienter. And First Solar's mere failure to reach its desired baseline output does not, by itself, render Defendants' earlier cheerier statements misleading. There can be no securities "fraud by hindsight." *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

The SAC's allegations that the Individual Defendants reviewed and approved documents discussing problems with the Series 6 fall prey to the same deficiencies previously identified by the Court. (*See* Doc. 33 at 12–13.) For one, these allegations are not particularized as to each Individual Defendant. (*See* Doc. 34 ¶¶ 109, 128, 130.) As previously explained, group pleading and generalized scienter allegations are insufficient. Moreover, FE 2's reports that "he received PowerPoint slides discussing the problems with the modules in the field" and that "these slides would have been reviewed and approved by First Solar's C-Suite" are insufficient. *See, e.g.*, *Lipton v. Pathogensis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002) (reasoning that an adequate "complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability" and that "negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient . . ."). Similarly, FE 6's assertion that "there was no way that First Solar's upper management could not have known of decisions to withhold shipment on modules" fails to contain any detailed information about any Individual Defendants' actual exposure to information. *See S. Ferry LP, No. 2 v.*

*Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard.").

Plaintiffs' allegations relating to Defendants' knowledge of the problems in the Systems Segment are equally deficient. The SAC solely provides FE reports of the logistics of First Solar's dismantling of the project development business within the Systems Segment. (*See* Doc. 34 ¶¶ 149–155.) Nowhere in these allegations do Plaintiffs allege that any of the Individual Defendants had access to or were otherwise involved with any of the alleged problems in the Systems Segment.

### b. Core Operations Doctrine

Plaintiffs next attempt to allege scienter through the "core operations" doctrine. (Doc. 34 ¶¶ 233–244.) This theory "relies on the principle that corporate officers have knowledge of the critical core operations of their companies." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). Core operations may support a strong inference of scienter under three circumstances:

> First, the allegations may be used in any form along with other allegations that, when read together, raise an inference of scienter that is cogent and compelling, thus strong in light of other explanations . . . Second, such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information . . . Finally, such allegations may conceivably satisfy the PSLRA standard in a more bare form, without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter.

*Killinger*, 542 F.3d at 785–86 (internal marks omitted). "Proof under this theory is not easy." *Intuitive Surgical, Inc.*, 759 F.3d at 1062. Plaintiffs using this theory face a "high burden of proof, as they must produce either specific admissions by one or more

- 8 -

corporate executives of detailed involvement in the minutia of a company's operations . . . or witness accounts demonstrating that executives had actual involvement in creating false reports." *Id.*

The SAC's core operation allegations fall short of meeting these standards. Instead of producing either specific admissions by any of the Individual Defendants or witness accounts of the Individual Defendants' involvement in creating false reports, the SAC merely emphasizes the importance of the Modules Segment and the Series 6 to First Solar's operations. (Doc. 34 ¶¶ 234–237, 239.) The SAC allegations relating to the Systems Segment do the same. (*Id.* ¶¶ 240–243.) All the Individual Defendant's statements highlighted by the SAC relate only to either the Series 6 or the project development business's importance to First Solar as a whole. (*Id.* ¶¶ 238, 244.) And these statements do not come close to detailing involvement in the minutia of First Solar's operations. Although Plaintiffs argue that "it would be absurd to suggest that Defendants were not aware of the problems with the Series 6 module[,]" the law requires more in the form of specific admissions or witness accounts. (Doc. 40 at 17.) As noted above, the SAC provides neither. Therefore, Plaintiffs' core operations theory also fails to raise a strong inference of scienter.

c. **Defendants' Statements**

Plaintiffs finally allege that the Individual Defendants' statements themselves support scienter. (Doc. 34 ¶¶ 245–255.) Plaintiffs maintain that Defendants' scienter "can be shown through their misstatements regarding specific matters about which they purport to know." (Doc. 40 at 17–18.) To be sure, a defendant's "detailed factual statement, contradicting important data to which she had access [supports] a strong inference . . . that she misled the public as to its clear meaning." *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights*, 856 F.3d at 605. But as explored above, the SAC lacks particularized allegations that any Individual Defendant had access to contradictory information. And unlike in *Reese*, where the defendant making the statement was a vice president directly responsible for

overseeing the relevant business segment, Widmar is the chief executive of a publicly traded company. *See Reese*, 747 F.3d at 572 (reasoning that unlike "the CEO of a large enterprise, who may be removed from the details of a specific business line or remote business activity" the vice president "would be among the first to know" of issues with the specific operations); *see also Glazer Cap. Mgmt. v. Magistri*, 549 F.3d 736, 743–49 (9th Cir. 2008) (finding no strong inference of scienter on the part of the company CEO in the absence of facts showing he was personally aware of illegal payments or that he was actively involved in details of the company's sales). Without particularized allegations that Widmar was aware of or had access to discrete information detailing specific issues, his statement that First Solar was "not falling short of any of [its] contractual obligations" does not support a strong inference of scienter. (Doc 34 ¶ 178.)

### d.  **Holistic Review**

Having determined that none of the SAC's allegations, standing alone, is sufficient to create a strong inference of scienter, the Court next considers the allegations holistically. *See Zucco*, 552 F.3d at 992. Taken together, the Court finds that the insufficient allegations do not evidence the fraudulent intent or deliberate recklessness necessary to lead to a strong inference of scienter that is at least as cogent as any competing inferences. *Tellabs*, 551 U.S. at 323. Accordingly, the SAC fails to adequately plead scienter.

### 2.  **Loss Causation**

Plaintiffs in securities fraud suits "must plead and ultimately prove that the defendant's wrongful conduct caused the plaintiff's injury." *In re BofI Holding*, 977 F.3d at 789. In enacting the PSLRA, Congress codified the requirement that securities fraud plaintiffs "shall have the burden of proving that the act or omission of the defendant alleged to violate [the law] caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "Typically, to establish loss causation, a plaintiff must show that the defendants' alleged misstatements artificially inflated the price of stock and that, once the market learned of the deception, the value of the stock declined."

*Irving Firemen's Relief & Ret. Fund*, 998 F.3d at 407 (citing *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1119–20 (9th Cir. 2013)). This is known as the "fraud-on-the-market" theory. *Nuveen*, 730 F.3d at 1120. To advance this theory, "the plaintiff must show that after purchasing her shares and before selling, the following occurred: (1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *In re BofI Holding*, 977 F.3d at 789. "The most common way for plaintiffs to prove that 'the truth became known' is to identify one or more corrective disclosures." *Id.* at 790 (citing *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753–54 (9th Cir. 2018) (per curiam)). Corrective disclosures occur "when 'information correcting the misstatement or omission that is the basis for the action is disseminated to the market.'" *Id.* (quoting 15 U.S.C. § 78u-4(e)(1)).

Although determining what constitutes a corrective disclosure "has proved more challenging than might have been expected, a few basic ground rules can be sketched out." *In re BofI Holding*, 977 F.3d at 790. Corrective disclosures do not require "an admission of fraud by the defendant or a formal finding of fraud by a government agency." *Id.* (citing *Metzler*, 540 F.3d at 1064). Rather, a corrective disclosure can "come from any source, including knowledgeable third parties such as whistleblowers, analysts, or investigative reporters." *Id.* (citation omitted). Also, corrective disclosures "need not reveal the full scope of the defendant's fraud in one fell swoop; the true facts concealed by the defendant's misstatements may be revealed over time through a series of partial disclosures." *Id.* (citation omitted). But while corrective disclosures "need not precisely mirror the earlier misrepresentation, [they] must at least relate back to the misrepresentation and not to some other negative information about the company." *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1207–08 (9th Cir. 2020) (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016)).

The SAC restates the two corrective disclosures alleged in the Amended Complaint—the January 2020 Barclays report and the February 2020 earnings call—and

adds a third, an October 2019 earnings call. (Doc. 34 ¶¶ 209, 213, 220.) For the following reasons, the Court finds that the two original disclosures remain deficient, and that the new allegation cannot constitute a corrective disclosure.

### a. October 2019 Earnings Call

The SAC's new loss causation allegations relate to an October 24, 2019, First Solar earnings call. (*Id.* ¶ 209.) Plaintiffs maintain that on this call, Defendants revealed to the market for the first time that First Solar did not expect to meet its 2019 cost per watt ("CpW") reduction target of 40% by year end. (Doc. 40 at 9.) As Defendants note, however, Plaintiffs fail to link this disclosure to any prior misstatement or omission. Plaintiffs respond that "based on FE accounts, the Series 6 manufacturing and performance problems, which negatively impacted the CpW metric, were a substantial factor that caused First Solar to fail to achieve the goal." (*Id.* at 10.) But this conclusory allegation fails to connect the disclosure to any previous misstatements or omissions, and the SAC does not allege that any of First Solar's previously quoted CpW metrics were false. As Plaintiffs note, "[d]isclosure of the fraud is not a sine qua non of loss causation, which may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss." *Nuveen*, 730 F.3d at 1120. But the law requires plaintiffs to "show a 'causal connection between the fraud and the loss by tracing the loss back to the very facts about which the defendant lied.'" *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 838 (9th Cir. 2022) (quoting *Mineworkers' Pension Scheme*, 881 F.3d at 753). Because Plaintiffs fail to connect the October 2019 disclosure to any allegedly fraudulent statements, this earnings call cannot serve as a corrective disclosure. Without this connection, it is unclear whether "[Defendants'] misstatement, as opposed to some other fact, foreseeably caused [Plaintiffs'] loss." *Mineworkers' Pension Scheme*, 881 F.3d at 754 (quoting *Lloyd*, 811 F.3d at 1210).

### b. January 2020 Barclays Report

Plaintiffs next revive their previous argument that the January 2020 Barclays report "revealed that First Solar's share of the project development market had dwindled

- 12 -

significantly[.]" (Doc. 40 at 11.) The Court previously determined that Plaintiffs' arguments on this issue conflated First Solar's existing share of systems projects (i.e., market share) with potential business growth opportunities, and that none of the alleged misrepresentations and omissions regarding the Systems Segment project development business related to First Solar's market share. (Doc. 33 at 7.) Plaintiffs attempt to circumvent this reasoning by focusing on the Barclays report's use of the word "pipeline," and defining it to refer to future opportunities. (*Id.*) This, Plaintiffs argue, makes clear that the Barclays report "relates directly to Defendants' misrepresentations regarding the size of the Company's Project Development pipeline." (Doc. 40 at 11.) An examination of the report, however, dispels this claim. The Barclays report pipeline analysis concerns itself entirely with First Solar's existing share of systems projects. Indeed, the SAC provides that the report "disclosed to the public for the first time the truth about the diminishing market share commanded by First Solar's Systems Segment." (Doc. 34 ¶ 213.) An unsurprising allegation given that the report focuses on providing an account of the projects that First Solar had already completed or that were in progress. (Doc. 39-7 at 9–10.) And the SAC does not plead any misstatements or omissions regarding First Solar's market share of existing contracts. Thus, the Court again finds that the Barclays report does not constitute a corrective disclosure.

### c.    February 2020 Earnings Call

The SAC largely retreads the same waters as the Amended Complaint in attempting to plead that First Solar's February 20, 2020 earnings call serves as a corrective disclosure. Again, Plaintiffs argue that this call was the first time that Defendants disclosed the failure to achieve the 2019 CpW target, the Series 6's failure to hit its 460 watt per module target, and that First Solar was exploring a sale of the project development business. (Doc. 40 at 13–14.) As the Court previously identified, however, First Solar had already disclosed in October 2019 that it was expecting to exit the year missing its CpW target, and the February 2020 call merely confirmed as much. (*See* Doc. 33 at 9 (citing *Grigsby*, 979 F.3d at 1205).) Moreover, as referenced earlier, the fact that

the Series 6 was falling short of its output target had already been disclosed to the market on the October 2019 call. Plaintiffs' sole new allegation is that Defendants' statements on the February 2020 call "revealed to investors for the first time that in the four months since [First Solar's] October 24, 2019 earnings call, [the] watts per module metric did not improve." (Doc. 34 ¶ 224.) But again, this sort of confirmatory information (i.e., information already known by the market) is generally reflected in the price of a security in an efficient market. *See Grigsby*, 979 F.3d at 1205 (citing *Myer v. Greene*, 710 F.3d 1189, 1198 (11th Cir. 2013)). And importantly, the SAC fails to connect this purported revelation to any prior misstatement or omission regarding the Series 6 output target. Similarly, the SAC's allegations regarding the sale of the project development business remain deficient by failing to connect Widmar's announcement of the sale exploration to any previous misstatement or omission. *See Or. Pub. Emps. Ret. Fund*, 774 F.3d at 608 (affirming a district court's dismissal of a complaint on the basis of loss causation where it was "unclear what claims made by the Defendants were invalidated" by the alleged corrective disclosure). Therefore, the Court finds that the SAC fails to adequately plead loss causation as to the February 2020 earnings call.

### d. Materialization of the Risk

The SAC also contains allegations purporting to establish loss causation under a "materialization of the risk" theory. (Doc. 34 ¶¶ 204, 208.) This theory posits that loss causation may be established by showing that "misstatements and omissions concealed the price-volatility risk (or some other risk) that materialized and played some part in diminishing the market value of a security." *Nuveen*, 730 F.3d at 1120 (internal marks and citation omitted). But as previously explained by the Court, the Ninth Circuit has not expressly adopted the theory. *See In re Nektar Therapeutics*, 34 F.4th at 838 n.6; *see also Magro v. Freeport-McMoran Inc.*, No. CV-16-00186-PHX-DJH, 2018 WL 3725781, at *9 (D. Ariz. Aug. 3, 2018). Nonetheless, the SAC only contains boilerplate allegations that the declines in First Solar's share price were "directly attributable to the market absorbing information that corrected and/or reflected the materialization of risks

concealed by Defendants' material misrepresentations or omissions." (Doc. 34 ¶ 204.) Indeed, the SAC is devoid of particularized allegations of any specific risks concealed by Defendants that ultimately materialized and played a role in the diminished value of the share price. Therefore, the SAC's materialization of the risk allegations do not alter the Court's conclusion.

### B.   Section 20(a)

Section 20(a) of the Securities Exchange Act of 1934 "imposes liability on certain controlling individuals . . . for violations of [S]ection 10(b) and its underlying regulations." *Prodanova*, 993 F.3d at 1113 (internal marks and citation omitted). To state a claim of control person liability under Section 20(a), a plaintiff must demonstrate "a primary violation of federal securities law" and that "the defendant exercised actual power or control over the primary violator." *Zucco Partners*, 552 F.3d at 990. As explored above, Plaintiffs failed to adequately plead a primary violation of Section 10(b). Therefore, the Section 20(a) control person claim necessarily fails. *See id.* ("Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of [S]ection 10(b).").

### C.   Leave to Amend

Plaintiffs' response to the Motion to Dismiss does not request leave to amend. Although leave may be granted even if no request was made, the Court "may in its discretion deny leave to amend due to undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies . . . , undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment." *Id.* at 1007 (internal marks and citation omitted). Having previously granted leave to amend, and considering the factors under Rule 15(a), the Court finds that leave to amend would be futile and unduly prejudicial the Defendants' interests in finality. Therefore, the Court will not grant Plaintiffs' leave to amend.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 38).

**IT IS FURTHER ORDERED** dismissing Plaintiffs' Second Amended Complaint (Doc. 34) and directing the Clerk of Court to close this case.

Dated this 23rd day of June, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge